**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY FATHI, | No. C 08-01548 JSW |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| BEN CURRY, | |
| Respondent. | |

## INTRODUCTION

Now before the Court for consideration is the petition for a writ of habeas corpus filed by Petitioner Anthony Fathi ("Fathi"), pursuant to 28 U.S.C. § 2254. The petition is now ripe for consideration on the merits. The Court has considered the parties' papers, the record, and relevant legal authority. For the reasons set forth herein, the Court DENIES the petition.

## BACKGROUND

**A.  Procedural History.**

A jury convicted Fathi of first degree murder for killing Daniel Teodurezcu. On April 29, 1987, the California Court of Appeal for the Fourth District ("the Court of Appeal") reversed Fathi's first degree murder conviction. (Respondent's Ex. 3, pt. 6 at 203.) On retrial, a jury convicted Fathi of second degree murder. (Petitioner's Ex. B at 193.) Fathi again appealed his conviction. (Respondent's Ex. 3, pt. 6, at 215.) On May 29, 1992, the Court of Appeal upheld the second degree

murder conviction. (*Id.* at 126.) On July 20, 1990, Fathi was sentenced to fifteen years to life in prison. (Petitioner's Ex. B at 194.)

Fathi's initial parole hearing occurred on November 25, 1992. The Parole Board ("the Board") denied Fathi parole for two years. (*Id.* at 162.) At his second parole hearing on October 4, 1994, the Board again denied Fathi parole for a two-year period. (*Id.* at 160.) The Board denied Fathi parole for a three-year period at his third parole hearing, which occurred on December 3, 1996. (*Id.* at 153.) On July 18, 2000, at his fourth parole hearing, the Board denied Fathi parole for a two-year period. (*Id.* at 147.) On July 29, 2002, at his fifth parole hearing, the Board denied Fathi parole for a three-year period. (*Id.* at 137.) At his sixth parole hearing, Fathi stipulated to a one-year denial of parole. (*Id.* at 135.) Fathi's seventh parole hearing occurred on August 2, 2005. At this hearing, the Board denied Fathi parole for five years. (*Id.* at 54, 58.)

Through this habeas petition, Fathi challenges the Board's decision at his seventh hearing. Fathi initially sought a writ of habeas corpus in the Orange County Superior Court, which denied his petition on August 27, 2007. (Petitioner's Ex. J.) Fathi appealed the Superior Court's denial to the Court of Appeal. (Petitioner's Ex. K.) On October 25, 2007, the Court of Appeal denied Fathi's habeas petition without opinion. (*Id.*) Fathi then filed a habeas petition with the Supreme Court of California, which on January 3, 2008 also denied his petition without opinion. (Petitioner's Ex. L.) Having exhausted his remedies in California's court system, Fathi filed a habeas petition with this Court on March 20, 2008. The Court found that Fathi's claims were potentially colorable under 28 U.S.C. § 2254, and ordered Respondent to submit an answer showing cause why Fathi's petition should not be granted.

**B.     The Underlying Crime.**

Fathi was convicted of killing Daniel Teodurezcu, the infant son of his then-girlfriend, Isabel Rodriguez. The facts as found by the Court of Appeal on direct review are as follows:

> Fathi, an Iranian immigrant, rented a room in the apartment of Isabel Rodriguez and her three-month old son, Daniel. Rodriguez and Fathi soon began dating; and several weeks into the relationship, Fathi moved into the bedroom Rodriguez shared with her son. But Fathi was not fond of the child and told Rodriguez she would have to give him up if they were to live together. She resisted the notion.
> . . . .

2

> Several days before Rodriguez began [a new] job as a restaurant cashier, Fathi bit the child on the leg while Rodriguez was in the bathroom. She and Fathi argued, and Rodriguez announced her intention to leave because of his treatment of her son. She relented, however, when Fathi begged her to stay and vowed to love and adopt her baby.
>
> . . . .
>
> On the morning of November 29, 1983, Rodriguez awoke at 6:30 a.m. to change Daniel and then returned to bed. Fathi left for work at 7 a.m . . . .
>
> Fathi met Rodriguez after work, and they walked home together. Their three roommates were watching television in the living room, and Daniel appeared as healthy and happy as when she left for work in the morning. She changed the baby and played with him, and he fell asleep about an hour later. Rodriguez placed the sleeping child on his stomach in his crib and left the bedroom to shower. Fathi remained in the room with Daniel.
>
> The child was still asleep when Rodriguez returned to the bedroom. But he was lying on his side, and his breathing appeared labored. Fathi was still in the room. Rodriguez dressed and the couple left for dinner after asking [her neighbor] to keep an eye on the baby.
>
> When they returned, Rodriguez noticed the child's breathing was even more labored. He was still lying on his side, but his eyes were now partially open. Rodriguez picked him up, but his eyes did not focus on her. His skin was white, but he did not cry. During the next hour Rodriguez and [one of her neighbors] ministered to the baby. An ointment was applied to his chest, and mint tea was prepared. But the baby could not swallow. His eyes remained open and unfocused, and he showed no signs of response. Rodriguez became frightened and wanted to take the baby to the hospital.
>
> Fathi, whom Rodriguez described as "excited," refused to let her take the baby to the hospital. He did suggest, however, that they take Daniel to his sister's nearby house. Not heeding his advice, Rodriguez went to Hoag Hospital with Gonzales and Cruz.
>
> The baby remained at Hoag for several more hours and was then transferred to Children's Hospital of Orange County. He was taken into surgery but died early the next morning of a ruptured stomach. A very great deal of force must be applied to cause such an injury, according to the expert medical testimony.
>
> After embalming, numerous bruises were evident on the child's back, side, head, and abdomen. Medical experts determined the bruises were less than 24 hours old when the baby died. There were severe internal injuries, including recently fractured ribs. Medical experts agreed the bruises were the result of blunt force trauma and consistent with child abuse.

(Petitioner's Ex. B at 203-06.)

3

**C.     Fathi's August 2, 2006 Parole Hearing.**

Fathi appeared before the Board for his seventh suitability hearing on August 2, 2006. (Respondent's Ex. A at 1.) The Board asked Fathi about his prior drug use, and he responded that he had used marijuana—both before and during his imprisonment—but denied being a regular user. The Board invited Fathi to state "anything else . . . about your history that would help us understand you better in terms of this crime which we have to deal with, in viewing if you're ready for parole," but he declined to do so. (*Id.* at 18:17-24.) The Board questioned Fathi about two marijuana-related violations that he committed while in prison (both in 2003), and he admitted to possessing and using marijuana while imprisoned. The Board then asked Fathi about his in-prison employment and educational experiences. The Board also reviewed Fathi's psychological report from 2000, but noted that it "doesn't[] count too much" because it was not recent. (*Id.* at 28:6-29:15.) The Board then reviewed letters that they had received in support of Fathi, which together demonstrated that he had several post-parole employment and housing options. The Board then invited questions from a deputy district attorney that was present at the hearing. The district attorney briefly questioned Fathi, and delivered a closing statement that asked the Board to deny Fathi parole for five years. The Board denied Fathi parole and, in a separate decision, found that Fathi should not be granted another parole hearing for five years.

The Parole Board provided three reasons for denying Fathi parole. The first reason was the circumstances surrounding the crime. On this point, the Board stated that:

> [t]he offense was carried out in an especially cruel and callous manner in that the victim, Daniel Teodurezcu, seven months, was particularly vulnerable in that he was totally dependent on adults for his life, and [Fathi] has a special relationship of trust with him as [Fathi was] acting in the capacity of a father to the child. The offense was carried out in a dispassionate and calculated manner in that [Fathi] had, on several occasions . . . struck the child . . . and reportedly bitten the child on the cheeks and legs . . . . The victim was abused and mutilated during the offense.

(*Id.* at 52:13–26.) Second, the Board relied on Fathi's misconduct while imprisoned. Specifically, the Board stated that Fathi "very recently had two serious disciplinary violations, both in 2003, one involving the possession of a controlled substance, and the other, a positive test for THC." (*Id.* at 54:9–12.) It further stated that Fathi "ha[s] a history of five 128(a)s, the most recent, again, in 2003

for delaying count." (*Id.* at 54:12–14.) Third, the Board observed that Fathi "appeared somewhat defiant" at the hearing in his attitude towards "the prison rules." (*Id.* at 56:22–24.)

## ANALYSIS

**A.     Standard of Review.**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Rose v. Hodges*, 423 U.S. 19, 21 (1971). Because the petition in this case was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's provisions apply. *Jeffries v. Wood*, 103 F.3d 827 (9th Cir. 1996) (en banc).

Under AEDPA, this Court may grant the petition with respect to any claim that was adjudicated on the merits in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams (Terry) v. Taylor*, 529 U.S. 362, 413 (2000) (hereinafter "*Williams*").

Under the "contrary to" clause of section 2254(d)(1), a federal court may grant the writ only if the state court "'applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless reaches a different result. *Early v. Packer*, 537 U.S. 3, 7 (2002) (quoting *Williams*, 529 U.S. at 405-06). Under the "unreasonable application" clause of section 2254(d)(1), a federal court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 412. The objectively unreasonable standard is not a

5

clear error standard. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067-69 (9th Cir. 2003), *cert denied*, 540 U.S. 968 (2003). After *Lockyer*, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them." *Clark*, 331 F.3d at 1068.

In determining whether the state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the highest state court has summarily denied a petitioner's claim, the habeas court may "look through" that decision to the last state court addressing the claim in a reasoned decision. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)).

The standard of review under AEDPA is somewhat different when the state court gives no reasoned explanation of its decision on a petitioner's federal claim and where there is no reasoned lower court decision on the claim. In such a case, a review of the record is the only means of deciding whether the state court's decision was objectively unreasonable. *See Hines v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Greene v. Lambert*, 288 F.3d 1081, 1088 (9th Cir. 2002). Therefore, while a state court decision on the merits concerning a question of law normally should be afforded respect, "[i]f there is no such decision on the merits . . . there is nothing to which to defer." *Greene*, 288 F.3d at 1089.

**B.  Fathi's Petition is Denied.**

    **1.  The Impact of *Hayward* on Fathi's "Some Evidence" Claim.**

Fathi claims that the Board's decision to deny him parole was not supported by "some evidence" of current dangerousness. Respondent argues that AEDPA precludes application of the "some evidence" standard, because AEDPA allows writs of habeas only for violations of clearly established Supreme Court precedent. On this point, Respondent argues that there is no clearly established Supreme Court precedent that requires "some evidence" of the inmate's danger to

6

support a denial of parole.

Respondent's argument ignores the Supreme Court's holding that "state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." *Board of Pardons v. Allen*, 482 U.S. 369, 371 (1987). The Supreme Court recently reiterated this rule in *Wilkinson v. Austin*, in which it held that "[a] liberty interest may arise from . . . an expectation or interest created by state laws or policies." 545 U.S. 209, 221 (2005). These and similar holdings have created a "long established" principle "that state law gives rise to liberty interests that may be enforced as a matter of federal law." *Pearson v. Muntz*, 606 F.3d 606, 611 (9th Cir. 2010) (per curiam).

The Ninth Circuit recently interpreted the Supreme Court's *Allen* and *Wilkinson* decisions in *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010). The *Hayward* court held that there is no constitutional right to "release on parole, or to release in the absence of some evidence of dangerousness" that arises directly from the Due Process clause of the United States Constitution. *Id.* at 555, 561. Nevertheless, the court held that such a right may "arise from substantive state law creating a right to release." *Id.* at 555. The *Hayward* court overruled *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123 (9th Cir. 2006), and *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007), to the extent those cases might be read to imply a contrary rule. *Id.*; *see also Pearson*, 606 F.3d at 610 n.3. Having held that substantive California law controlled their inquiry, the court then held that, under California law, inmates have "the right to parole in the absence of 'some evidence' of future dangerousness." *Hayward*, 603 F.3d at 562. Therefore, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002).

"California law requires the Board to grant an eligible inmate a parole date unless the Board determines that 'consideration of the public safety requires a more lengthy period of incarceration for this individual.'" *Pirtle v. Cal. Board of Prison Terms*, 611 F.3d 1015, 1020 (9th Cir. 2010) (quoting Cal. Penal Code § 3041(b)). Thus under California law, "the paramount consideration . . . is whether the inmate currently poses a threat to public safety." *In re Lawrence*, 44 Cal. 4th 1181, 1210 (2008) (citing *In re Dannenberg*, 34 Cal. 4th 1061, 1070-71, 1079-1080, 1083-84, 1091, 1094,

7

1098 (2005), and *In re Rosencrantz*, 29 Cal. 4th 616, 653-54, 682-83 (2002)). To find that the inmate currently threatens public safety, there must be "some evidence" that the inmate is presently dangerous. *Pirtle*, 611 F.3d at 1020; *Hayward*, 603 F.3d at 562 (citing *Lawrence*, 44 Cal. 4th at 1205-06).

The California Supreme Court has provided guidance as to what may constitute "some evidence" that an inmate poses a present danger to the public. Notably, "the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public." *Lawrence*, 44 Cal. 4th at 1214 (emphasis in original); *see also In re Shaputis*, 44 Cal. 4th 1241, 1254-55 (2008) ("This inquiry . . . cannot be undertaken simply by examining the circumstances of the crime in isolation . . . ."). "Thus, there must be more than the crime or its circumstances alone to justify the Board's or the Governor's finding of current dangerousness." *Cooke v. Solis*, 606 F.3d 1206, 1214 (9th Cir. 2010). There is, however, an exception to this general rule: the Board may find present danger based on the crime's aggravated circumstances if "something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety." *Lawrence*, 44 Cal. 4th at 1214.

Accordingly, as explained in *Hayward*, the Court reviews Fathi's "some evidence" claims to determine whether the California judicial decision approving the Board's decision to deny parole "was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" *Hayward*, 603 F.3d at 562-63 (quoting 28 U.S.C. § 2254(d)(1)-(2)); *see also Cooke*, 606 F.3d at 1213; *Pearson*, 606 F.3d at 608.

### 2. The Superior Court's Decision Was an Unreasonable Application of the "Some Evidence" Standard.

Both the Supreme Court of California and California Court of Appeal summarily denied Fathi's habeas petition. (*See* Petitioner's Ex. K-L.) The Superior Court of Orange County ("the Superior Court") provided the last reasoned decision regarding Fathi's habeas petition. (*See* Petitioner's Ex. J.) Therefore, the Court "looks through" the appellate courts' decisions and

reviews the reasoned decision provided by the Superior Court. *See Shackleford*, 234 F.3d at 1079 n.2 (citing *Ylst*, 501 U.S. at 803-04).

In its opinion, the Superior Court emphasized that the Parole Board was entitled to deny parole based solely on the circumstances surrounding Fathi's commitment offense, so long as the Board "point[ed] to factors 'beyond the minimum elements of the crime.'" (Petitioner's Ex. J at 3 (quoting *Dannenberg*, 34 Cal. 4th at 1071).) Applying that standard, it reasoned that the Board had identified additional factors, e.g. that the victim was particularly vulnerable and had suffered terribly. (*Id.*) Therefore, the Superior Court held, the Board could deny Fathi parole based on these circumstances without "engag[ing] in a further analysis." (*See id.*)

This holding unreasonably applied California's "some evidence" standard. As a general rule, the Board was not permitted to find some evidence of present danger based solely on the circumstances of Fathi's commitment offense. *See Lawrence*, 44 Cal. 4th at 1221.[1] Rather, it was required to also consider "the passage of time [and] the attendant changes in the inmate's psychological or mental attitude." *Id.* The Board was bound by that rule unless "something in [Fathi's] pre- or post-incarceration history" or his demeanor indicated that the circumstances of his commitment offense remained indicative of his present dangerousness. *Id.* at 1214. In contrast to these rules, the Superior Court held that the Board could deny Fathi parole based exclusively on the circumstances of the commitment offense, even without "further analysis" of Fathi's pre- or post-incarceration history and his demeanor. Therefore, the court unreasonably applied California's "some evidence" standard.

### 3. The Board's Decision to Deny Fathi Parole Was Supported By "Some Evidence."

The Court's finding that the Superior Court unreasonably applied the "some evidence" standard does not end the inquiry. Rather, the Court's "power to grant the writ of habeas corpus to a state inmate depends on his actually being in custody in violation of the Constitution or laws . . . of the United States." *Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008) (quoting 28 U.S.C.

---

[1] When the Superior Court rendered its decision on August 27, 2007, it did not yet have the benefit of *Lawrence*'s explanation of California's "some evidence" standard. (Petitioner's Ex. J.)

§ 2241(c)(3)) (internal quotation marks omitted).  To determine whether Fathi is "actually" in custody unlawfully, the Court must "proceed to a de novo analysis of whether, under a correct interpretation of Supreme Court precedent," the Board's decision violated Fathi's due process rights. *Id.*; *see also Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (when state court unreasonably applies federal law, the "federal court must then resolve the [habeas] claim without the deference AEDPA otherwise requires").  If the Board provided adequate reasons for denying Fathi parole, then Fathi is not in custody in violation of United States law, regardless of the Superior Court's opinion. *See Butler*, 528 F.3d at 641; *Fellman v. Davison*, No. CV 07-5399 JFW (FFM), 2010 WL 4241574, at *5-6 (C.D. Cal. Aug. 24, 2010) (holding that Superior Court unreasonably applied the "some evidence" rule by finding that petitioner's "crime itself . . . show[ed] unsuitability" for parole, and reviewing de novo the Board's decision).  Therefore, Fathi is entitled to habeas relief only if the Board denied him parole without making findings that constituted "some evidence" that Fathi continued to pose a danger to the community.

The Board denied Fathi parole based in large part on the circumstances surrounding his commitment offense.  On their own, these findings cannot constitute "some evidence" of his current dangerousness.  As the Ninth Circuit recently held, "[w]e need not decide whether these findings [regarding the commitment offense] are themselves supported by the record . . . because they cannot, standing alone, constitute the requisite evidence of current dangerousness." *Cooke*, 606 F.3d at 1216 (applying the "some evidence" standard).  Therefore, the Court examines the Board's additional reasons for its decision to deny Fathi parole to determine whether those reasons offer "some evidence" that Fathi posed a danger to the community.

According to the record, the Board also based its decision "on [Fathi's] lack of insight into [his] criminality." (Respondent's Ex. A at 56:19-20.)  The Board determined that Fathi's attitude towards illegal drugs and his disciplinary violations while in prison evidenced this lack of insight. (*Id.* at 56:20-21.)  These were proper considerations for the Board because "engag[ing] in serious misconduct in prison or jail" tends to show parole unsuitability.  Cal. Code Regs. tit. 15, § 2402(c)(6).

For the Board to rely on Fathi's disciplinary violations to support its denial of parole, the

10

findings must be supported by the record. *See e.g.*, *Holder v. Curry*, __ F. Supp. 2d __, 2010 WL 3076822, at *11 (N.D. Cal. Aug. 6, 2010) (disregarding Board's findings of dangerousness where "the record shows these findings are not only unsupported by any evidence in the record, but are, in fact, contradicted by it"). Here, the record demonstrates that Fathi committed three instances of serious misconduct while imprisoned: first, he was found guilty of manufacturing alcohol in January 1992; second, he was found guilty of possessing marijuana in August 2003; third, he was once again found guilty of marijuana possession in November 2003, merely three months after his first marijuana violation. (Respondent's Ex. 4, pt. 2, at 80.) At his hearing before the Board, Fathi expressed ambivalence towards these violations: for example, when the Deputy Commissioner advised Fathi that "it's real important that you not pick up [violations]," Fathi responded that "it's impossible not to pick up [violations]" in prison. (Petitioner's Ex. A at 23:1-4.) He also appeared to argue that the amount of marijuana he possessed was insignificantly small. (*See id.* at 19:5-20 ("One milligram of green leaves, yeah. You barely can see that.").) The Court finds that the close proximity of the marijuana offenses, the fact that the most recent offense occurred less than three years before the hearing, and Fathi's unrepentant attitude support the Board's finding that Fathi posed a present danger to the community.[2]

The Board also found that Fathi appeared defiant at his parole hearing. This observation finds support in the record. *See Holder*, __ F. Supp. 2d __, 2010 WL 3076822, at *11 (disregarding Board's findings of dangerousness where "the record shows these findings are not only unsupported by any evidence in the record, but are, in fact, contradicted by it"). When the Board gave Fathi a final opportunity to address the Board before it made its decision, Fathi used that opportunity to "be[] vituperative against the District Attorney" rather than to express remorse. (*Id.* at 50:21-51:23.)

---

[2] These circumstances distinguish Fathi's disciplinary infractions from those of the petitioner in *Cooke*, which the Ninth Circuit held were not probative of the petitioner's current dangerousness. *See Cooke*, 606 F.3d at 1215. In *Cooke*, the Board relied on "one [infraction] for trafficking marijuana, and two for disobeying prison rules and regulations" to support its denial of parole. *Id.* The Ninth Circuit found that these infractions did not amount to "some evidence" of public danger because: (1) "the marijuana charge had been dismissed as unsubstantiated, and thus should not have been considered by the board"; (2) the two remaining offenses were minor; and (3) the two remaining offenses occurred in 1992 and 1993, and the petitioner was discipline-free for nearly a decade at the time of the parole hearing. *Id.* Here, in contrast, Fathi was convicted of not one, but two marijuana offenses, they were not dismissed, they were major, and they were recent.

11

When asked whether he had urged Rodriguez to put the victim up for adoption, Fathi stated that "even if I was saying . . . put the child for adoption, that would be a very good advice. This child would have been alive today if [Rodriguez] would have done as I said." (*Id.* at 42:7-41:3.) Moreover, when the Deputy District Attorney who was present at the hearing demonstrated that Fathi had lied to the psychologist during his 2000 psychological evaluation about his past drug use, he did not accept responsibility or apologize, but instead reasoned that "I don't consider the [marijuana] plant a drug." (*Id.* at 43:6-27.) This defiant attitude suggests that Fathi lacks recognition of the gravity of his offense, and lacks respect for the law and the rehabilitative process. It was not unreasonable for the Board to interpret this attitude as some evidence of current danger to the community. Accordingly, the Court finds that the record supports the Board's finding that there was some evidence that Fathi posed a current danger to the community.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Fathi's petition for a writ of habeas corpus. Rule 11(a) of the Rules Governing Section 2254 cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, a certificate of appealability is not warranted in this case. A separate judgment shall issue, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 29, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE